Cassidy v. Secretary, Florida Department of Corrections, Okay, Mr. Traeger. Thank you, Chief Judge Breyer. May it please the Court. The question in this appeal is straightforward. Is Mr. Cassidy's 2017 amended judgment the relevant judgment for AEDPA's statute of limitations in Section 2244d1a? The answer is equally straightforward, yes, because the 2017 judgment contains Mr. Cassidy's current convictions and sentence pursuant to which he is in custody. That conclusion resolves this case because the State concedes that if the statute of limitations runs from Mr. Cassidy's 2017 judgment, then his petition is timely. I would first like to address why the 2017 judgment. And unlike the last case, this is not one where it's designated as non-protunk. And in fact, the district the State trial court at one time entered a non-protunk order, and the wording of that order was different from the one that we're now analyzing. That's correct, Chief Judge Breyer. I think on the non-protunk issue, our fundamental submission is that the district court erred in classifying the 2017 judgment as a non-protunk order because the State court did not. I think the joint appendix makes crystal clear that the 2017 judgment is not a non-protunk order. That Latin phrase does not appear in the order vacating his conviction at J125. The Latin phrase doesn't appear in the amended judgment reflecting his current conviction. So the State court and the State court — I'm sorry, the district court and the State seem to suggest that there are indicia on that document that at least allow for an implicit determination by the State court of non-protunk. Specifically, the original date appears, although empty there, and then signed as of, electronically done at the bottom by the district court judge as a part of electronic signature. And that that indicates it was meant to relate back to the original date. What do we make of that? So, Judge Leck, let me answer that in sort of two ways. So, first, as a matter of fact, the electronic signature block on J145, you know, I don't think is an indicia that this is a non-protunk order. And as the Chief Judge just pointed out, we know that. We know that the district court or, excuse me, the State court did not intend the 2017 judgment to be a non-protunk order, because in 2014, it entered an order correcting a clerical error, this is J80, and expressly entered that order non-protunk. So that demonstrates that the State court in this case knows how to enter non-protunk orders, could have entered the 2017 judgment non-protunk if it thought it was appropriate. That's certainly some good evidence. But is there not some evidence on the side that the district court found and that the State is arguing to us that there is indicia indicating that despite the lack of an explicit designation, that there is some reason to believe the State court did mean to relate this back to the original time at sentencing? I don't think so, Judge Leck. You know, what happened in this case is that there was the original sentencing form, then there was the amended sentencing form. That's the one that was expressly entered non-protunk. And then you can see when you look at the forms, then there was the second amended sentencing form. That's at JA145. And each time, the clerk's office is taking the same form and then making the modification. And so that language on the bottom about done and entered on such and such date is just a carryover. It's boilerplate language from the original sentencing form. And in the second amended sentencing form at JA145, the State electronically signs it and enters the current date in 2017. But I think, and this is my second response, Judge Leck, which is that this is, you know, to the extent that this is a question of Florida law, non-protunk orders have been a regular feature in Florida law going back at least 80 years to the Florida Supreme Court's 1935 decision in Fawcett. The State has not identified a single Florida appellate decision holding that an order was non-protunk that was not expressly entered non-protunk. And so, you know, our first and foremost argument is that it's the State that is seeking to create Florida law in this case. They have provided no basis for the district court's rationale that an order that was not expressly non-protunk could be deemed such and given retroactive effect. And so putting that aside, then, I think the question in this case is just which is the judgment that authorizes Mr. Cassidy's custody, the 2017 judgment or his original 2012 judgment. And Patterson sets out the rule for answering that question. You look at the order that authorizes the Petitioner's confinement. And in this case, that's the 2017 judgment. As Chief Judge Pryor was focusing on the prior argument with my colleague, we're looking for that specific language that authorizes their custody. Why is a judgment not looked at? I understand it uses, the statute uses the term a judgment and the references to a single judgment and sentence. But why is that looked at for a single judgment and sentence in a multi-count case for all counts as opposed to a judgment for a count, meaning you committed one murder and there's a judgment and sentence, a judgment for that count, and another murder and there's a judgment for that count, and so on and so forth. Why do we look at it that there's one document that has to apply to all of it, and even though what we've changed affects one thing and doesn't affect the things you're actually arguing about, we have to see it as somehow a new confinement and new change. So the reason, Judge Locke, is I think not only does the statutory text compel that conclusion, which you identified, but also – I'm not sure that's true. In other words, it does say a judgment, but that doesn't mean it has to be a judgment for – that statutory language says nothing about counts. In other words, when we consolidate multiple crimes into one trial, all we're doing it as a matter of convenience. It doesn't mean that they are the same thing. In fact, the law is very clear that they are different things. We just happen to be doing it as a matter of convenience. And in fact, where there's prejudice from that or where there aren't relatedness, those things actually should be severed out into two separate trials. In other words, we could have three separate trials, but it's just easier to have one and have a jury – one jury decide all of it as opposed to three separate juries. The – ADEPA says nothing about that, right? That's correct, Judge Locke, but when there is one separate trial, it results in a singular judgment at the end. Where are you getting that from? Well, the Court in this case entered a single judgment. Well, it entered one judgment that listed three counts, but then it put in three separate sentences, did it not? It did. But so even putting aside – And you understand that as a matter of Florida law, it has to do that, right? I do understand. So even putting – As a matter of Florida law, in fact, if it did give a general sentence, meaning one sentence for all counts, that would actually be legal under Florida law. You understand that? Understood. So putting aside the fact that the statutory text refers to a singular judgment, and therefore the Supreme Court in Magwood said that the existence of a new judgment is dispositive – Magwood was a single-count case, though, was it not? It was. But I would point you – so I want to turn, then, to the statute's So on the structure, I think it's notable that other subsections in D-1 run – the clock runs from the occurrence of other events. And in 2255-F, Congress ran the clock from a judgment of conviction, a separate term that is defined in the Federal Rules of Criminal Procedure. Except that 20 – you cited 2255, right? That's correct. But that's the problem. That deals with Federal, not State. No, I think the 2255 judge lock is instructive because what it shows is that Congress made a deliberate decision in subsection D-1a to run the clock from the judgment when it could have run the clock, say, from a conviction, when the conviction became final. It didn't do that. It chose the singular-term judgment. Give me the case law part that you think – that you think dictates the result. Sure. So, Judge Locke, I'd point you to two cases. I'll take them in turn, Ferrara and Insignaris. So Ferrara, I think, is directly responsive to your question, where the Court acknowledged that pre-Burton, it understood the term judgment in 2244 to actually be comprised of a judgment of conviction and a judgment of sentence. And on remand after Burton, Ferrara, the Court acknowledged that that sort of dual reading of the term judgment was untenable. Ferrara was also a single-count case, though, was it not? That's correct. But I don't think – You've got to give me a multi-count case. Insignaris was a multi-count case where the Court reduced the mandatory minimum on a single count while leaving the Petitioner's total 27-year sentence intact and then entered an amended judgment. And this Court held that that was the relevant judgment for 2244, even though, notably, the Petitioner only challenged their underlying convictions and not the specific mandatory minimum reduction. He challenged the conviction that had been actually modified. My understanding, Judge Hull, is that I'm not – He challenged only the conviction for which his sentence was modified, as opposed to, like here, he's challenging convictions for which no sentence modification has occurred. Is that not correct? That's correct, because in this case – Because count three was gone, but count one and two have remained the same throughout. Is that correct? That's correct, Judge Hull. Okay. But I don't see why that distinction is a meaningful difference in applying the statute of limitations. And I would point you to Magwood. I take Judge Locke that it's a single-count case, but I think the Court there was unequivocal that in adopting a judgment-based reading of 2244. So to the extent that – You agree, though, there are other circuits that have viewed it, a judgment to be a judgment for each sentence. In other words, each count, not reading it in a multi-count case as one document that applies to all of it, and one change to one part that is unaffected by what we're talking about wouldn't change anything for statute of limitations purposes, right? I would acknowledge that. I would say that the split is lopsided, and I would disagree with my colleague's reading of the split. So I think that the Seventh Circuit is the only circuit that has taken this claim-by-claim approach. You don't think the third has done so as well? I don't think so. Let me read from Romanski. Quote, potentially the result could be different in a court system using sentencing package doctrine where a trial court has undertaken a de novo resentencing as to all counts of conviction if any count is vacated on appeal under the theory that the sentencing judge could craft a disposition in which the sentences on the various counts form a part of an overall plan. In that case, the resentencing might constitute a new judgment as to every count of conviction, at least if we were to follow the majority approach to the open question in Magwood. Here, however, the Pennsylvania courts imposed separate sentences for each count and conducted only a limited resentencing after retrial. Isn't that exactly what we have here? I disagree, Judge Law. I think that you have to look at the facts of Romanski, where there was a retrial on vacated counts, and the court entered a judgment only concerning those counts. So the judgment only authorized the Petitioner's custody on those counts. It didn't address or contain their — the convictions that were not disturbed or addressed in the retrial. And so in that sort of very unique circumstance, going back to our colloquy earlier about, you know, why we have a single trial and you could have multiple trials, there there were two trials. There were two judgments. But that only makes sense in a case where there is a sentencing and judgment for each count. In a world where there can only be one, then Romanski would have to say any touching of one would affect the whole, right? I think — In other words, you have to accept the premise that there's more than one in a multi-count case. Not necessarily. Again, I think that the facts of Romanski, where there were two judgments that didn't overlap in any way, judgment one addressed, you know, counts A, B, and C, and judgment two addressed counts X, Y, Z, those are — that's a very different scenario than what we have here, where the State court vacated one conviction and then entered a new amended judgment reinstating the convictions on one and two and reimposing the sentence, and that is the sentence that — How are you reinstating the conviction? They may reinstate the sentence. Are they really reinstating a conviction that's never been challenged? Well, of course, Judge Hall, Mr. Cassidy did challenge his first and second conviction in his State post-conviction proceedings. The State court — But they denied that and they vacated three, count three. That's correct. And what I was — Reinstating the conviction, isn't that just denying the challenge to an existing conviction? Well, I think, Judge Hall, what I was referring to is the language on JA-129 — Okay. — where — of the amended judgment that contains his convictions on one and two, and the language on that form says that, you know, Mr. Cassidy is, again, adjudicated guilty on those counts. Okay. Thank you. I'm fine. Thank you. Okay, Mr. Trager. Mr. Duffy. Thank you, Chief Judge Pryor. May it please the Court, on behalf of the Secretary of the Department of Corrections and the Attorney General of the State of Florida, Thomas Duffy, on behalf — here from the Tallahassee Criminal Appeals Bureau. Briefly, our point — we have three main arguments. One, that while the judgment in 2017 did not say it was non-proton, the judge intended it to be non-proton. The problem for me with that is, it seems to — in other words, just in the same way that a designation of non-proton we're stuck with, it seems to me that where it's not there, that we're stuck with that as a matter of State law. In other words, mistake or not, right or wrong, where it's not there, we can't read it in. And on the other hand, where it's there, right or wrong, we can't read it out. Am I — tell me how that — I understand your point. I don't necessarily — excuse me — agree with it. Well, because — State law. Well, you wouldn't be deciding State law. You would be looking at this judgment to see if there were indicia, as you said, that it was intended to be that way. As to the argument about the 2014 — That's crystal clear. Isn't it? It's crystal clear. It says non-proton. I mean, it couldn't be clear, right? But it didn't say so on the document that authorized the conviction. It did not say so on the sentencing. It said so in a separate order. And it didn't say what it was non-proton to. It didn't — generally, when these things, they say, you know, done and ordered this date, blah, and then non-proton to earlier date. It didn't do that. So I don't necessarily think this judge didn't know how to do a non-proton order. But that's — you know, that's our story, and we're sticking to it. Let's put aside non-proton. What is your next argument? Well, the next argument — Just forget about the non-proton aspect of all this. And let's say, do you make the next argument that the convictions under which he's serving confinement have never changed, and neither has the sentences to those convictions? Yes. We're asking the Court to adopt the reasoning and the authorities in the Third, Fifth, and Seventh Circuits. How does that square, though, with Insignaris? So I happen to read Insignaris the same way that your opposing counsel got up here and said. It seems directly on point to the question of, is there one judgment and sentence in a case where there's multiple counts, just as to that question. The issue in Insignaris was — the amendment was to the challenged sentence, not to — or the challenged sentence. You're 100 percent right. But I don't understand. That doesn't answer the question of, is there a single document, or is there a document for each? Because if there's a single document, then we said in Magwood that any change to that document, even if it's kind of insignificant, but that reimposes the confinement, is a new judgment and sentence. And so even if you're right that it didn't have really effect on anything we're talking about here, there's still a new document, and that is a singular document, that imposes a conviction and sentence and reimposes the authorization of the confinement in that one document. I understand what you're saying. But I think Chief Judge Pryor's point about you look at it conviction by conviction is the compelling point here. No, I never said that. I don't think that was a point. I'm sorry. That was never my point. My point was you look at the judgment that authorizes the confinement. And in the last case that your colleague argued, there's a very clear non-proton designation on the sentences that authorize the confinement. And here there's not. Here there's not. I'm where Judge Luck is. We can't read it in, and we can't read it out. We're stuck with what the judgment provides and the judgment that authorizes the petitioner's confinement. But moving past that, getting to the issue, the second issue that we raised here, the second argument that we made that even if the court were to decide that this was not a non-proton judgment, it nevertheless would not be a judgment that restarted the clock for habeas under. How can you do that under Ferrara, Insignaris, Magwood, Patterson? I will tell you, and to piggyback on that, in Patterson the questions we asked, and we know this because Judge Ed Carnes wrote a very helpful concurring opinion for us, laid out the questions that were asked to the parties. And one of them had to do with whether we should overrule Insignaris to deal with the question that you're raising now. And the reason that matters is because that means that Patterson and the entire court read Insignaris to mean that it precludes the argument that you're making now. We ducked the question in Patterson, but aren't we just as bound by Insignaris as the Patterson panel was? I don't think so, because of the distinction that I made, which is that in Insignaris, the amended judgment was on the same count that it wasn't like this case. No, but that view, the view of the Third and the Seventh Circuit is predicated on there being multiple judgments for multi-count cases. And it is. I mean, go read the cases. It is. I understand your point. I don't know that that necessarily means that they do judgments differently in those States than they do in Florida. No, they do it exactly like Florida. I think we're wrong to treat Florida as a sentencing package case as opposed to an individual sentencing State. But my point is, in Insignaris, it doesn't matter, because we're stuck with the holding there that even in a multi-count case, it is treated as a single judgment. And that's how we read Magwood, and that's how we read Ferrara in that case. And so I just, even if I'm sympathetic to your argument, and I think maybe you're right as an initial matter, I just don't see how we can get around Insignaris. That's what I'm having trouble with. Well, I hope you can figure a way to do that, because I think this would be an important addition to the jurisprudence of the AEDPA. The problem with it, too, is that your kind of purpose-based argument is running around. It's a runaround to some extent of the text of the statute, which focuses on a single judgment authorizing the confinement and how the Supreme Court treated that in Magwood, which is what drove Insignaris. I mean, I understand Judge Luck's frustration with Insignaris, but in the light of that text and Magwood, I'm not sure that there's much we can do about it. We distinguished Magwood, as I'm sure you know, on the fact that that was a single-count case, and these are multiple-count cases, and that's what we're basing this on. We also have a third point, and in the previous argument, Krangel was brought up. We believe that Freeman v. Wainwright out of the Sixth Circuit, which would go against us on the non-proton aspect of it, but it would create an exception to that when it's a partial resentencing that is favorable to the defendant. And that was a question that was solicited in Patterson, Ace Patterson's case. It was solicited and not answered in that case. And we think that would make sense. And what that would do would long into our prior panel precedent in Insignaris. In other words, the reason we asked that question in Patterson was because we were asking whether we should overrule Insignaris. Because in Insignaris, it also was a beneficial change. It took out the 10-year mandatory minimum because it didn't qualify under the 1020-life statute. And so once it was taken out, which is clearly a benefit to the defendant, there was an appeal. And we said that that was a sufficient enough change in which to restart the statute of limitations, right? I'm not sure because it was a beneficial change. I don't my recollection of Insignaris is that it removed something that had already expired. Sure. And that was Osborne as well. He already served more than 10 years. Right, yeah. Or its benefit. How is having a 10-year mandatory minimum and then no longer having it not a benefit to the defendant? He sought the relief. It was granted relief. It's possible that he sought that relief in order to get what he got, which was a new sentence or very manipulative of a rule that's not intended to be gained like that. Whatever the intent is, my point is, if Insignaris we said that that was sufficient to trigger a new statute of limitations, that I don't see why that result wouldn't be dictated here, even if it was a benefit to remove count three. I don't think what we're proposing here is contrary to Insignaris. That's our position. One of the evils or gaming of the systems that it would effectively eliminate is something that has happened in Florida, which is somebody who did opposite of Insignaris. What he did was say, hey, when I got that robbery conviction along with my murder conviction, I didn't get the 10-year minimum mandatory I was supposed to get. Counsel, counsel, I'm — if you want to have an offline discussion about the evils of 3800A and no time limit, I'm happy to have that with you. But under Florida law, 3800A puts no time limit on corrections of sentences.  As you know. And that's what's causing the issue here. It's not ADEPA, and it's not our case law, which I tend to agree with our Chief Judge, is consistent with a plain reading of the statute. Of 2244? Right. Not 3800A? Right. Okay. No, you're correct. And that can lead to a lot of problems. But what are you going to do? I mean, you can't say, okay, you've got a time limit to challenge an illegal sentence. That would be improper. So we're stuck with that. And what that leads to is the reanimation of incredibly stale claims. And if you adopted what the Sixth Circuit did in Freeman, that would affect that. Show me where in the text it distinguishes between changes that are beneficial or those that are detrimental. It's not in the text. Right. And it was read in by the Sixth Circuit. The problem. Again, counsel, I think all of us on this panel understand the frustration that you're talking about and that this can be gained. I think people understand what you're saying. But you're right. You've identified one problem, which is there are lots of incorrect judgments and sentences that are signed by state court judges in the state of Florida. And the other, which is ADEPA, which is trying to put a time limit, but also balance giving a fair shot to one full ride with regard to habeas. And there may be a way to square that circle, but it has to be done consistent with the law. I understand that. But I think that's an important part that ought not to be overlooked. All right. So here's the thing. You've got to address Incinnares, okay? Because it's multi-count, right? I'm sorry. I couldn't. Incinnares is a multi-count case. Right. But the amendment was only to the count that was being challenged. And that is not what the third ---- Even though it reentered the sentence as to the other counts, the amended part was only to the count being challenged. Right. And your argument needs to be, all right, so you can distinguish that case. Because here's what the rule is going to be now. As long as you get one vacated and you get a new judgment and it doesn't say nothing pro tonque, you're going to be able to go back to 20-year-old crimes and you're going to be able to challenge everything that's in that case. So that's what the rule is. You're saying Incinnares does. And we'd have to say, no, it doesn't open up everything. It does what happened in that case is the new sentence, the new thing, the new judgment was dealing with a change. The new judgment, it was reentered as to the other counts, but the new judgment only was about the conviction part. That's how you'd have to distinguish it. Because otherwise what we're going to have is you get one thing changed and you don't put nothing pro tonque in there, it's all open again. Is that what you're saying? I adopt that argument. Yeah, I thought. If there are no further questions, we ask that you. Thank you, Mr. Duffy. I think we've got your case. Mr. Trager, do you want to tell us anything for three minutes? Thank you, Chief Judge Pryor. I'd like to make two points. First, on the colloquy we've been having about multi-count judgments. And then second, the importance of clear rules for statutes of limitations. So on the first point, in addition to the text of the statute, the statutory structure, and this Court's cases as to why this Court should read judgment in 2244 to encompass all of these things, in a multi-count judgment, I want to turn back to Insignaris. And we were having the colloquy, Judge Hull, you asked about the challenge and the habeas petition in Insignaris. That's a multi-count judgment. The state court reduces the mandatory minimum on one count, leaving the petitioner's 27-year sentence intact. And at least as I read the decision, the COA that the district court granted lists a number of claims that were then put before the petitioner could challenge in federal court. And that COA describes a number of claims that would apply to all of the convictions in Mr. Insignaris' judgment, not just the one conviction that had the mandatory minimum reduced. I know, but the district court didn't change anything except for that one thing. That's correct. He only granted the claim as to one thing. That's correct. And one count and didn't change anything else. That's correct. But the petition as a whole, which attacked a lot of things, was timely. That's right, exactly, Chief Judge Pryor, that the claims in the petition that was not deemed second or successive, those claims apply to all of the convictions in the multi-count judgment. Isn't that exactly why we needed to ask the question we asked in Patterson in order to overrule Insignaris? We ended up not. In other words, the reason we had to take it en banc was because Insignaris said exactly what you're saying to us. Well, and the sort of preceding question, which was whether the order there barring chemical castration qualified as a judgment. Sure, and that's what we ended up deciding on, which was the right thing to do. But my point is we had to ask those questions in order to get to if we were going to overrule Insignaris, because otherwise we're bound by exactly what you just described Insignaris to be. Yes, yes, that's correct, Judge Locke. And I just want to add before turning to the final point, which is that Insignaris explicitly rejected the Seventh Circuit's approach in Turner, and we think the Court should do so here. Finally, I just want to emphasize the importance of clear rules for statutes of limitations, particularly in the AEDPA context, where Petitioners are proceeding pro se, and the purpose of the statute is to advance efficiency and finality. Congress set out a clear rule in 2244d1a that this Court has had no trouble applying in Ferrara, Insignaris, Patterson. I'd point you to St. Cyr decided in April. Judge Locke, you were on that panel. The State's rule, by contrast, is going to require district courts to examine the nature and the scope of State trial resentencings. It's going to require district courts to ask whether the sentence in the amended judgment was worse or better than the Petitioner's original sentence. In short, the State's rule is going to bring anything but clarity to 2244. We ask that this Court apply the Is your client here in the new 2254 making the same claims he made previously in this successive Judge Locke, am I under? Yeah. Yeah, you may. Yeah, go ahead. So, Judge Locke, this is his first Hull. I'm sorry, Judge Hull. This is Mr. Cassidy's first Federal habeas petition. He hadn't had any prior ones. Okay. That's correct. And so we would ask this Court to reverse. Unlike Patterson who had had prior ones. Okay. Got it.  Thank you, Mr. Trager. We understand your case. We're going to move to the next one.